IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:22-cv-00191-WCM

| | |
|---|---|
| AMBER MICHELLE CRAMER, ) </br> ) </br> Plaintiff, ) </br> ) </br> v. ) </br> ) </br> COMMISSIONER OF THE SOCIAL ) </br> SECURITY ADMINISTRATION, ) </br> ) </br> Defendant. ) </br> _____ ) | MEMORANDUM OPINION </br> AND ORDER |

This matter is before the Court following the filing of Plaintiff's Complaint Requesting Review of an Administrative Decision under the Social Security Act, and the parties' briefs. (Docs. 1, 11, 13, 16).[1]

## I. Procedural Background

In November of 2018, Plaintiff Amber Michelle Cramer ("Plaintiff") filed applications for disability insurance benefits and supplemental security income, alleging disability beginning on September 30, 2017. Transcript of the Administrative Record ("AR") 322; 324-330; 331-342.

On March 15, 2021, following an administrative hearing, an unfavorable decision was issued by an Administrative Law Judge ("ALJ"). AR 138-163.

---

[1] The parties have consented to the disposition of this case by a United States Magistrate Judge. Doc. 15.

1

Plaintiff challenged that decision, and the matter was remanded by the Appeals Council. See AR 164-168.

On December 29, 2021, following another administrative hearing, the ALJ issued an unfavorable decision. AR 10-38. That decision is the Commissioner's final decision for purposes of this action.

## II. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of "obesity, fibromyalgia, rheumatoid arthritis, pulmonary embolism, depression, PTSD, anxiety, obstructive sleep apnea, and absence seizures." AR 16. After determining that Plaintiff's impairments did not meet or medically equal one of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform "light work" with additional physical and postural limitations. AR 18-19. Additionally, the ALJ found that Plaintiff had the RFC to:

> perform simple and detailed work with occasional decision-making, frequent judgment required on the job; occasional changes in the work setting; and a reasoning level up to and including 3, which can be performed on a sustained basis 8 hours a day, 5 days a week, in two-hour increments with normal work breaks for an 8-hour workday. She requires a low-stress work environment, defined as non-production work, specifically no fast-paced work like an assembly line where one would have to produce a product in a high-speed manner. She can never have contact with the public and can have occasional contact with coworkers.

2

AR 19.

Applying this RFC, the ALJ found that Plaintiff had the ability to perform the representative jobs of "garment sorter," "stock checker," and "price marker," which exist in significant numbers in the national economy, such that Plaintiff was not disabled during the relevant period. AR 31-32.

### III. Plaintiff's Allegations of Error

Plaintiff contends that the ALJ failed to explain why the ALJ found a state agency psychologist's opinion to be persuasive but did not incorporate certain limitations set out in that opinion into Plaintiff's RFC. Additionally, Plaintiff argues that one of the jobs relied upon by the ALJ is inconsistent with Plaintiff's RFC.

### IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the

claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

V. Discussion

### A. Plaintiff's Mental Limitations

The reasoning development scale of the Dictionary of Occupational Titles has six levels—Level 1 requires the least reasoning ability, while Level 6 requires the most reasoning ability. See DOT, App. C, 1991 WL 688702. A "reasoning level of one" requires the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and "[d]eal

4

with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT, Appendix C, 1991 WL 688702. A "reasoning level of two" requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." Id. A "reasoning level of three" requires the ability to apply "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations." Id.

Here, on initial review, state agency consultant Nicole Mannis, Psy.D., provided an opinion regarding Plaintiff's mental limitations. AR 94-96. Dr. Mannis' assessment indicated that Plaintiff had moderate limitations with respect to understanding and memory, concentration and persistence, and social interaction. AR 95-96. Regarding Plaintiff's understanding and memory limitations specifically, Dr. Mannis concluded that Plaintiff "may have some difficulty with detailed instructions" but appeared "capable of completing simple 1-2 step instructions." AR 94.

Plaintiff contends that, based on Dr. Mannis' opinion, the ALJ should have included in the RFC a limitation to "simple 1-2 step instructions" and that the ALJ's omission of this limitation is "significant because a limitation to one to two step instructions would preclude each of the reasoning level two jobs

5

the ALJ cited" as a basis for denial of Plaintiff's social security claim. Doc. 11 at 2.

In his decision, the ALJ explained that he found Dr. Mannis' opinion that Plaintiff had moderate limitations in understanding and memory, concentration and persistence, and social interaction to be "persuasive," and noted that Plaintiff's treatment records included "numerous normal findings on mental status examination, with positive findings generally within the mild to moderate range." AR 29 (citing AR 580 (January 2020 treatment note); AR 583 (September 2019 treatment note); AR 587 (June 2019 treatment note); AR 510 (May 2019 psychological evaluation); AR 677-681 (April 2021 treatment note); AR 692-711 (May 2021, June 2021, and September 2021 treatment notes)).

The ALJ also reviewed Plaintiff's mental health treatment records, and again noted Plaintiff's generally normal mental status exams, with some findings of "fair" short term and remote memory, and that it appeared that Plaintiff had received conservative treatment for mental health symptoms. AR 24-26 (citing, e.g., AR 491 (June 2019 treatment note, 495 (August 2017 treatment note)); AR 25 (citing e.g., AR 580; AR 652 (August 2020 treatment note); AR 607 (January 2020 treatment note); AR 611 (April 2020 treatment note); AR 693 (May 2021 treatment note).

Specifically with respect to Plaintiff's ability to understand, remember, and apply information, the ALJ explained:

> The claimant's moderate limitations in understanding, remembering, or applying information has been considered in the residual functional capacity's limitation to the performance of simple and detailed work with occasional decision-making, frequent judgment required on the job; occasional changes in the work setting; and a reasoning level up to and including 3, which can be performed on a sustained basis 8 hours a day, 5 days a week, in two-hour increments with normal work breaks for an 8-hour workday. Despite multiple findings of normal cognitive function and the claimant's report of no memory loss to her cardiologist in May 2020, I have considered the outpatient mental health treatment notes from June through September 2021, which note some deficits in short term and remote memory, as well as slowed cognitive functioning.

AR 26-27 (citing AR 602, 607, 611, 648, 692-711).

"[T]he substantial evidence standard 'presupposes…a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" Dunn v. Colvin, 607 Fed. Appx. 264, 274 (4th Cir. 2015) (quoting Clarke v. Bowen, 843 F.2d 271, 272-273 (8th Cir. 1988)); see also Griffin v. Comm'r, No. SAG-16-274, 2017 WL 432678, at *3 (D. Md. Jan. 31, 2017) ("[A]n ALJ need not parrot a single medical opinion, or even assign 'great weight' to any opinions, in determining an RFC"; "[i]nstead, an ALJ is required to consider 'all of the

relevant medical and other evidence'") (quoting 20 C.F.R. §§ 404.1545 and 416.945)).

Here, it appears that while the ALJ agreed with Dr. Mannis that Plaintiff had some moderate limitations in the functional area of understanding, remembering, and applying information, the specific limitations in Plaintiff's RFC are based on the ALJ's analysis of Plaintiff's mental health treatment records. The undersigned is not persuaded that the ALJ was required to adopt each specific limitation proposed by Dr. Mannis or to explain in further detail why such additional limitations were not included in Plaintiff's RFC. Cf. Chambless v. Saul, No. 1:19-cv-00322-MR-WCM, 2020 WL 5577883, at *4 (W.D.N.C. Sept. 17, 2020) ("if an ALJ assigns significant or great weight to a medical opinion, but implicitly rejects part of that opinion by failing to include a limitation in the RFC, the ALJ must explain the inconsistency"); see also Angela U v. Kijakazi, No. 2:22-cv-34, 2022 WL 3207455, at *9 (E.D. Va. July 19, 2022) ("Failing to discuss every opinion within a medical opinion also does not constitute cherrypicking"). Therefore, the undersigned will not remand the case on this basis.

### B. The Jobs Relied Upon By the ALJ

The ALJ determined that Plaintiff retained the ability to perform three representative occupations: garment sorter (DICOT 222.687-014, 1991 WL 672131), stock checker (DICOT 299.667-014, 1991 WL 672642), and price

8

marker (DICOT 209.587-034, 1991 WL 671802). The Dictionary of Occupational Titles describes the job of stock checker as:

> Gathers and counts garments tried on by customers in fitting rooms of retail store: Hangs garments according to size on display racks, and refastens belts, buttons, and zippers on garments tried [on] by customers. Counts number of garments carried in and out of dressing rooms to assure no garments are missing. May sew on missing and loose buttons, hooks, and loops.
>
> DICOT 299.667-014, 1991 WL 672642.

Plaintiff argues that because this description references customers, it appears to require interaction with the public, and therefore conflicts with her RFC, which precludes public contact. Plaintiff further argues that if the job of stock checker is not considered, there is insufficient evidence regarding the availability of the remaining two jobs, such that the Commissioner has failed to carry the burden of establishing that there are a significant number of jobs in the national economy that Plaintiff could perform.

However, the ALJ asked the vocational expert whether the job of stock checker involved contact with the public, and the vocational expert testified that it did not. See AR 66-67.

Additionally, even if a conflict between Plaintiff's RFC and the job of stock checker exists, the ALJ also found that Plaintiff could perform the jobs of garment sorter and price marker. Based on the testimony of a vocational

expert, the ALJ also noted that 98,000 jobs of garment sorter and 126,000 jobs of price marker existed in the national economy. AR 32. The undersigned is not persuaded that the availability of these other two jobs is insufficient to carry the Commissioner's burden. See Cogar v. Colvin, 3:13-cv-380-FDW, 2014 WL 1713795, at *7 (W.D.N.C. April 30, 2014) (explaining that "[t]he Fourth Circuit has previously found as few as 110,153, and even 650 jobs significant enough to satisfy the Commissioner's burden" and concluding that "[w]ith these numbers in mind, clearly 830 laundry folding jobs in North Carolina and 35,000 laundry folding jobs nationally account for 'significant numbers'") (citations omitted); Vizzini v. Berryhill, No. 1:17-cv-00233-RJC-DSC, 2018 WL 4561623, at *4 (W.D.N.C. Sept. 24, 2018) (even assuming certain jobs identified by the vocational expert conflicted with plaintiff's RFC, the remaining jobs proffered by the vocational expert, which were identified as totaling 19,000 nationally, were "well in excess of what is necessary to meet the Commissioner's burden at step five").

## VI. Conclusion

For the reasons stated above, the Commissioner's final decision is **AFFIRMED**. The Clerk of Court is respectfully directed to enter a separate judgment in accordance with this Order.

Signed: August 31, 2023

W. Carleton Metcalf
United States Magistrate Judge